**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:21-cv-00120-GNS-LLK**

**ANNETTE H.**                                                                                                               **PLAINTIFF**

**v.**

**KILOLO KIJAKAZI, Acting Commissioner of Social Security**                                **DEFENDANT**

### REPORT AND RECOMMENDATION

Plaintiff filed a complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claim for Disability Insurance Benefits under Title II of the Social Security Act. [Doc. 1]. The fact and law summaries of the parties are at Doc. 27-2 and 30. The Court referred the matter to the undersigned Magistrate Judge for "consideration and the preparation of a report and recommendation pursuant to 28 U.S.C. Section 636(b)(1)(B)." [Doc. 18].

Plaintiff makes two arguments. Because the arguments are persuasive, the RECOMMENDATION will be that the Court REMAND this matter to the Commissioner for a new decision.

### Plaintiff's first argument is persuasive.

First, Plaintiff argues that the "[t]he Commissioner erred as a matter of law in failing to adequately evaluate if the Plaintiff's systemic lupus erythematosus met or equaled Listing 14.02A." [Doc. 27-2 at PageID.1191-98].

Systemic lupus erythematosus (hereinafter "lupus") is described in Appendix 1, Section 14.00D1 as follows:

> a. General. Systemic lupus erythematosus (SLE) is a chronic inflammatory disease that can affect any organ or body system. It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss). Major organ or body system involvement can include: Respiratory (pleuritis, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia, leukopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition ("lupus fog"), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis). Immunologically, there is an array of

1

> circulating serum auto-antibodies and pro- and anti-coagulant proteins that may occur in a highly variable pattern.

Section 14.00D1.

> Listing 14.02(A) describes the clinical criteria of per-se disabling lupus:
>
>> Systemic lupus erythematosus. As described in 14.00D1. With:
>>
>>> A. Involvement of two or more organs/body systems, with:
>>>
>>> 1. One of the organs/body systems involved to at least a moderate level of severity; and
>>>
>>> 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

Listing 14.02(A).

The Administrative Law Judge (ALJ) acknowledged that Plaintiff suffers from severe, or vocationally significant, lupus. [Doc. 17 at 78]. The ALJ did not specifically address the issue of whether Plaintiff's lupus satisfies the clinical criteria of Listing 14.02(A). The ALJ did, however, make the following general findings for Immune System Disorders, which would include lupus:

> Throughout this decision, the undersigned has considered the claimant's impairments under the provisions of listings 14.00 (Immune System Disorders) and found that the claimant's conditions do not meet or medically equal the criteria of the listed impairments. The claimant does not allege that she has an impairment of listing level severity, nor has she met her burden of presenting medical evidence that supports such a finding. The undersigned has reviewed the medical evidence of record in its entirety and finds that, when considered individually or in combination, the claimant's impairments do not meet or equal the level of severity set forth in any of the listings.

*Id.* at 79.

Plaintiff points to evidence, which was before the ALJ, from which the ALJ could have concluded that Plaintiff's lupus involves:

> 1. The "organ/body system" consisting of her heart and rising to "at least a moderate level of severity." [Doc. 27-2 at PageID.1194 referencing evidence at Doc. 17, pp. 563-67, 670].

2

2. The "organ/body system" consisting of her vision/eyesight and rising to "at least a moderate level of severity." *Id.* at 1195 referencing Doc. 17 at 531, 563-64, 604, 669, 685, 699, 1047.

3. The "organ/body system" consisting of her skin and rising to "at least a moderate level of severity." *Id.* at 1195-96 referencing Doc. 17 at 490, 497, 505, 507, 604, 963.

4. The "organ/body system" consisting of her muscles and joints and rising to "at least a moderate level of severity." *Id.* at 1196 referencing Doc. 17 at 490, 604, 1010.

5. The constitutional symptom/sign of severe fatigue, where "severe fatigue" is defined as "frequent sense of exhaustion that results in significantly reduced physical activity or mental function." Section 14.00(C)(2). *Id.* referencing Doc. 17 at 505.

6. The constitutional symptom/sign of malaise, where "malaise" is defined as "frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." Section 14.00(C)(2). *Id.* at 1197 referencing Doc. 17 at 1013.

The above evidence raised a "substantial question as to whether [she] could qualify as disabled" under a listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (quoting *Abbott v. Sec'y of Health & Human Servs.*, 905 F.2d 918, 925 (6th Cir.1990)). In such cases, the "ALJ should discuss the relevant listing." *Id.* Stated somewhat differently, the ALJ "needed to actually evaluate the evidence, compare it to … [the requirements of Listing 14.02(A)], and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r*, 424 F. App'x 411, 416 (6th Cir. 2011). "Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id.*

Several district courts within the Sixth Circuit have remanded cases where there was a substantial question of satisfying Listing 14.02(A) and the ALJ's findings in that regard were inadequate to facilitate meaningful review. *See e.g. Smalcer v. Comm'r*, No. 1:21-CV-01033-CAB, 2022 WL 2079377, at *7 (N.D. Ohio May 24, 2022) (report adopted) ("This evidence could have affected the ALJ's assessment as to

whether Claimant suffered from at least two of the constitutional symptoms or signs necessary under Listing 14.02(A)."); *Garza v. Comm'r*, No. CV 15-11507, 2016 WL 703038, at *4 (E.D. Mich. Jan. 22, 2016) (report adopted) ("[B]ecause Garza has identified sufficient evidence from which the ALJ could have concluded that she suffers both severe fatigue and malaise, the Court cannot conclude that the ALJ's Step Three analysis was mere harmless error.").

In recommending that the Court remand this matter to the Commissioner for additional findings regarding whether Plaintiff's lupus satisfies the clinical criteria of Listing 14.02(A), this Report does not mean to imply that it finds Plaintiff's Listing 14.02(A) argument to be airtight. Upon remand, the Commissioner should consider the following interpretative questions (sufficiently to facilitate meaningful review in the event of a denial decision).

First, as noted above, Listing 14.02(A) requires involvement of two or more organs/body systems, where "[m]ajor organ or body system involvement can include: Respiratory (pleuritis, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia, leukopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition ("lupus fog"), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis)." Section 14.00D1. Plaintiff argues that her lupus involves the following organs/body systems: cardiac/heart, vision/eyesight, skin, and muscle/joint. Vision/eyesight and muscle/joint are not listed at Section 14.00D1. But arguably the list is intended to be broad and open ended.

Second, Plaintiff argues that her lupus involves her cardiac system / heart, but the evidence cited pertains to her brain. Specifically, Plaintiff cites to evidence at Doc. 17, p. 670 (on April 2017, Plaintiff experienced a loss of awareness, and a brain MRI revealed an "acute infarct within the left posterior parietal cortex"), p. 564 (the MRI also revealed "mild probable sequelae of known lupus"), and p. 567 (the event was characterized as a "severe SLE [systemic lupus erythematosus] manifestation with CNS [central

4

nervous system] involvement and acute ischemic CVA [cerebrovascular accident]"). But arguably it is just as disabling for the effects to be on the brain as the heart.

Third, besides severe fatigue, the only other constitutional symptom/sign Plaintiff alleges is malaise. Plaintiff cites a single instance of malaise. [Doc. 27-2 referencing Doc. 17 at 1013]. On October 14, 2019, Plaintiff visited the doctor with symptoms of influenza, including malaise:

> HISTORY: This is a 46-year-old white female who presents to the clinic today with complaints of cough and chest congestion, green sputum, severe sore throat, body aches and chills. She was exposed to influenza approximately a week before the symptoms began. She also complaints of **malaise** and mild nausea. She only vomits when she coughs. She denies any fever.

*Id.* at 1013 (emphasis added). This does not prove the presence of malaise associated with lupus. But arguably malaise and severe fatigue are interrelated symptoms/signs.

### Res judicata does not invalidate Plaintiff's first argument.

In this case, Plaintiff filed a prior claim for Title II benefits. [Doc. 17 at 125]. On February 26, 2018, the prior ALJ denied the claim, finding that Plaintiff was not disabled from December 22, 2014, when she alleged that she became disabled, through the decision date on February 26, 2018. *Id.* at 125-41. The prior ALJ's decision became the Commissioner's prior final decision.

On May 19, 2018, Plaintiff filed the present claim for Title II benefits. *Id.* at 75. On February 20, 2020, the present ALJ denied the claim, finding that Plaintiff was not disabled "at any time from December 22, 2014, the alleged onset date, through December 31, 2019, the date last insured" for Title II benefits. *Id.* at 84.

The prior ALJ acknowledged that Plaintiff suffers from severe, or vocationally significant, "history of anti-phospholipid syndrome (APS)" and lupus. *Id.* at 128. The prior ALJ found that Plaintiff's APS and lupus do not satisfy Listing 14.02(A) because "[w]hile the claimant has complained of fatigue, there is no evidence of at least two of the constitutional symptoms or signs." *Id.*

On February 20, 2020, the present ALJ issued the Commissioner's final decision, finding that "[r]es judicata … applies to the period through February 26, 2018, the date of the previous decision." *Id.* at 75.

Plaintiff's first argument is based to a significant degree on evidence pertaining to matters that occurred before February 26, 2018. Specifically, Plaintiff cites to evidence at Doc. 17, pp. 490, 497, 505, 507, 531, 563, 564, and 567, and these pages pertain to matters that occurred before February 26, 2018.

This Report, however, declines to forego consideration of the earlier evidence based on res judicata for two reasons. First, the present ALJ considered the earlier evidence in his written decision, which this Court is presently reviewing. Second:

> We do not endorse the position that all evidence or medical records … submitted in support of an earlier proceeding, are necessarily irrelevant or automatically barred from consideration by res judicata. We recognize that evidence presented at an earlier hearing …, when evaluated in combination with later evidence, may help establish disability. This is particularly true when the disabling condition is progressive. *See Groves v. Apfel*, 148 F.3d 809, 810–11 (7th Cir.1998).

*DeBoard v. Comm'r*, 211 F. App'x 411, 414 (6th Cir. 2006).

### Plaintiff's second argument is persuasive.

Second, Plaintiff argues that "[t]he Commissioner erred as a matter of law by mischaracterizing evidence pertaining to the severity of the Plaintiff's systemic lupus erythematosus." [Doc. 27-2 at PageID.1198-1202].

According to the present ALJ, there were no flare-ups or extensive complications after the prior ALJ's decision on February 26, 2018 (and only three flare-ups before February 26, 2018:

> … The evidence indicates that since the prior Administrative Law Judge's decision in February of 2018, the claimant continued to experience symptoms associated with systemic lupus erythematosus, including decreased blood platelet counts, international normalized ratios below 3.0, fatigue, joint pain and occurrences of transient monocular blindness of the right eye. (Ex B4F, B6F, B7F, B10F, B11F). The claimant addressed these symptoms with periodic lab work and prescribed medications. (Ex B3F, B4F, B7F, B10F, B11F, B15F, B18F). **The claimant had only few flare-ups from this condition, those occurring in 2014, 2016 and 2017.** (Ex B11F, B18F, B19F).

[Doc. 17 at 81 (emphasis added)].

> … The evidence … shows that the claimant's condition has not significantly changed since the prior Administrative Law Judge's decision. … Specifically, the lack of significant mental health

6

> treatment, as well as the normal findings on many of the psychiatric portions of examinations. **Likewise, the reasonable and routine treatment for Lupus and associated symptoms, which did not result in any extensive complications.** (Ex B8F, B10F, B11F, B14F, B15F, B17F, B18F, B19F).

*Id.* at 82 (emphasis added).

Plaintiff argues that, in fact, she had flare-ups and extensive complications after February 26, 2018:

> For example, on March 15, 2018, medical records showed that plaintiff experienced recent transient right eye flashing and mild malar erythema. Tr. 597. On March 20, 2018, plaintiff was reevaluated for recurrence of transient monocular blindness of the right eye in the setting of a lupus spectrum autoimmune disorder. Tr. 669. On April 30, 2018, an evaluation by Debbie Martin, APRN [advanced practice registered nurse] confirmed that plaintiff had multiple joint pain and that her knees hurt so bad that she was unable to climb steps normally because the pain was so severe. Tr. 1010. On May 15, 2018, plaintiff reported experiencing one episode of transient monocular visual loss affecting her right eye. Tr. 604. She also reported still having a malar rash and joint pain in the patellofemoral region. Tr. 604. On July 10, 2018, Dr. Pettigrew opined that the plaintiff had a diagnosis of Right Homonymous Hemianopsia. Tr. 685. On October 13, 2019, plaintiff was evaluated for complaints of memory loss and vision changes. Tr. 1047. Loss of vision was in the right eye and lasted 20 minutes, symptoms were moderate. Tr. 1047. On October 14, 2019, plaintiff was diagnosed with Malaise and Myalgias. Tr. 1013. On November 1, 2019, plaintiff was evaluated for confusion and vision loss. Tr. 953. Plaintiff also reported poor sleep and fatigue. Tr. 963. Mild malar erythema was still noted to be present. Tr. 963.

[Doc. 27-2 at PageID.1199-2000]. Judicial review would be facilitated in by additional findings regarding this evidence pertaining to the period after the prior ALJ's decision.

## RECOMMENDATION

Because Plaintiff's arguments are persuasive and the ALJ's decision is not supported by substantial evidence, the Magistrate Judge RECOMMENDS that the Court REMAND this matter to the Commissioner for a new decision and any further administrative proceedings deemed necessary and appropriate by the Commissioner.

August 29, 2022

Lanny King, Magistrate Judge
United States District Court

**NOTICE**

Under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984).

August 29, 2022

Lanny King, Magistrate Judge
United States District Court